# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# EASTERN DIVISION

| | |
|---|---|
| RICHARD C., <br><br> Plaintiff, <br><br> vs. <br><br> COMMISSIONER OF SOCIAL SECURITY, <br><br> Defendant. | No. 25-cv-2001-CJW <br><br> **REPORT AND RECOMMENDATION** |

_____

Richard C. ("Claimant") seeks judicial review of a final decision of the Commissioner of Social Security ("the Commissioner") in denying his application for disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. Sections 401-34. For the reasons that follow, I recommend that the Commissioner's decision be **reversed and remanded**.

## I. BACKGROUND

Claimant was born in 1970. (AR[1] at 213.) He earned a GED in 1997. (*Id*. at 218.) Claimant allegedly became disabled due to anxiety, depression, diabetes, back and shoulder problems, heart disease, sleep apnea, emphysema, fibromyalgia, and undiagnosed stomach issues. (*Id*. at 217.) Claimant's alleged onset of disability date is February 1, 2018. (*Id*. at 213.) On July 18, 2022, Claimant protectively filed his application for DIB. (*Id*. at 17, 183.) His claim was denied originally on December 29, 2022 (*id*. at 17, 90-98) and was denied on reconsideration on March 31, 2023. (*Id*. at

---

[1] "AR" cites refer to pages in the Administrative Record.

1

17, 100-11.) A hearing was held on October 24, 2023, with Claimant and his attorney Hugh Field appearing by online video before Administrative Law Judge ("ALJ") Erin T. Schmidt. (*Id*. at 36-71.) Vocational Expert ("VE") Melinda Stahr also appeared at the hearing telephonically. (*Id*.) Claimant and the VE both testified at the hearing. The ALJ issued an unfavorable decision on February 20, 2024. (*Id*. at 17-30.)

Claimant requested review and the Appeals Council denied review on November 13, 2024. (*Id*. at 1-3.) Accordingly, the ALJ's decision stands as the final administrative ruling in the matter and became the final decision of the Commissioner. *See* 20 C.F.R. § 404.981.

On January 10, 2025, Claimant timely filed his Complaint in this Court. (Doc. 3.) On July 10, 2025, all briefing was completed, and the Honorable C.J. Williams, Chief United States District Court Judge, referred the case to me for a Report and Recommendation.

## II. DISABILITY DETERMINATIONS AND THE BURDEN OF PROOF

A disability is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A claimant has a disability when, due to physical or mental impairments, the claimant:

> is not only unable to do [the claimant's] previous work but cannot, considering [the claimant's] age, education, and work experience, engage in any other kind of substantial gainful work which exists . . . in significant numbers either in the region where such individual lives or in several regions of the country.

42 U.S.C. § 423(d)(2)(A). A claimant is not disabled if the claimant is able to do work that exists in the national economy but is unemployed due to an inability to find work,

lack of options in the local area, technological changes in a particular industry, economic downturns, employer hiring practices, or other factors. 20 C.F.R. § 404.1566(c).

To determine whether a claimant has a disability, the Commissioner follows a five-step sequential evaluation process. *Swink v. Saul*, 931 F.3d 765, 769 (8th Cir. 2019). At steps one through four, the claimant has the burden to prove he or she is disabled; at step five, the burden shifts to the Commissioner to prove there are jobs available in the national economy. *Moore v. Astrue*, 572 F.3d 520, 523 (8th Cir. 2009). "If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled." *Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir. 2006) (quotation omitted).

At step one, the ALJ will consider whether a claimant is engaged in "substantial gainful activity." *Id*. If so, the claimant is not disabled. 20 C.F.R. § 404.1520(a)(4)(i). "Substantial activity is significant physical or mental work that is done on a full- or part-time basis. Gainful activity is simply work that is done for compensation." *Dukes v. Barnhart*, 436 F.3d 923, 927 (8th Cir. 2006) (citing *Comstock v. Chater*, 91 F.3d 1143, 1145 (8th Cir. 1996); 20 C.F.R. § 404.1572(a)-(b)).

If the claimant is not engaged in substantial gainful activity, at step two, the ALJ decides if the claimant's impairments are severe. 20 C.F.R. § 404.1520(a)(4)(ii). If the impairments are not severe, then the claimant is not disabled. *Id.* An impairment is not severe if it does not significantly limit a claimant's "physical or mental ability to do basic work activities." *Id.* § 404.1520(c). The ability to do basic work activities means the ability and aptitude necessary to perform most jobs. *Bowen v. Yuckert*, 482 U.S. 137, 141 (1987); *see also* 20 C.F.R. § 404.1521(b). These include:

> (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to

3

supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting.

*Id.* (quotation omitted) (numbers added; internal brackets omitted).

If the claimant has a severe impairment, at step three, the ALJ will determine the medical severity of the impairment. 20 C.F.R. § 404.1520(a)(4)(iii). If the impairment meets or equals one of the impairments listed in the regulations ("the listings"), then "the claimant is presumptively disabled without regard to age, education, and work experience." *Tate v. Apfel*, 167 F.3d 1191, 1196 (8th Cir. 1999) (quotation omitted).

If the claimant's impairment is severe, but it does not meet or equal an impairment in the listings, at step four, the ALJ will assess the claimant's residual functional capacity ("RFC") and the demands of the claimant's past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). RFC is the most an individual can do despite the combined effect of all his or her credible limitations. *Id.* § 404.1545(a); *Toland v. Colvin*, 761 F.3d 931, 935 (8th Cir. 2014). RFC is based on all relevant evidence and the claimant is responsible for providing the evidence the Commissioner will use to determine RFC. *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004). "Past relevant work" is any work the claimant performed within the fifteen years prior to this application that was substantial gainful activity and lasted long enough for the claimant to learn how to do it. 20 C.F.R. § 404.1560(b)(1). If a claimant retains the RFC to perform past relevant work, then the claimant is not disabled. *Id.* § 404.1520(a)(4)(iv).

At step five, if the claimant's RFC will not allow the claimant to perform past relevant work, then the burden shifts to the Commissioner to show that there is other work the claimant can do, given the claimant's RFC, age, education, and work experience. *Id.* §§ 404.1520(a)(4)(v), 404.1560(c)(2). The ALJ must show not only that the claimant's RFC will allow the claimant to do other work, but also that other work

exists in significant numbers in the national economy. *Eichelberger*, 390 F.3d at 591 (citation omitted).

## A. The ALJ's Findings

The ALJ made the following findings regarding Claimant's disability status at each step of the five-step process. Initially, the ALJ determined that Claimant met the insured status requirements through September 30, 2024. (AR at 19.) The ALJ then applied the first step of the analysis and determined that Claimant had not engaged in substantial gainful activity from his amended alleged onset date of April 16, 2020.[2] (*Id.*) At the second step, the ALJ concluded from the medical evidence that Claimant suffered from the following severe impairments: arthritis of knees and shoulders, obesity, lumbar degenerative disc disease, fibromyalgia, coronary artery disease with venous stasis, anxiety and depression/adjustment disorder, and emphysema. (*Id.*) At the third step, the ALJ found that Claimant did not have an impairment or combination of impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. (*Id.* at 15.) The ALJ evaluated Claimant's claims under listing 1.15 (disorders of the spine), 1.16 (lumbar spinal stenosis resulting in compromise of the cauda equina), 1.18 (abnormality of a major joint), 3.02 (chronic respiratory disorders), 4.02 (chronic heart failure), 12.04 (depressive disorders), and 12.06 (anxiety disorders). (*Id.* at 20-22.) The ALJ also determined that Claimant did not satisfy either the "paragraph B" or "paragraph C" criteria. (*Id.* at 22.) At the fourth step, the ALJ determined that Claimant had the following RFC:

> [C]laimant has the residual functional capacity to perform light work as defined in 20 CFR [§] 404.1567(b) except he can occasionally stoop, crouch, crawl, kneel, balance, and climb ramps and stairs. He should do no climbing of ladders, ropes or scaffolds. There should be no exposure to potential workplace hazards such as moving machinery or unprotected heights. He can occasionally reach overhead bilaterally. He may have

---

[2] At the administrative hearing held on October 24, 2023, Claimant's attorney amended the alleged disability onset date from February 1, 2018 to April 16, 2020. (AR at 41.)

> occasional exposure to extremes of heat and cold, humidity, or potential pulmonary irritants such as fumes, odors, dusts, and gases. He can perform simple, routine tasks with occasional interaction with the general public.

(*Id.*) Also at the fourth step, the ALJ determined that Claimant was unable to perform his past relevant work. (*Id.* at 29.) At step five, the ALJ found that there were jobs that existed in significant numbers in the national economy Claimant could perform, including router clerk, marker, and garment sorter. (*Id.* at 29-30.) Thus, the ALJ concluded that Claimant was not disabled. (*Id.* at 30.)

## B.     *The Substantial Evidence Standard*

The ALJ's decision must be affirmed "if it is supported by substantial evidence in the record as a whole." *Grindley v. Kijakazi*, 9 F.4th 622, 627 (8th Cir. 2021) (quoting *Pickney v. Chater*, 96 F.3d 294, 296 (8th Cir. 1996)). "The phrase 'substantial evidence' is a 'term of art' used throughout administrative law. . . . [T]he threshold for such evidentiary sufficiency is not high. . . . It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal citations and quotations omitted); *see also Kraus v. Saul*, 988 F.3d 1019, 1024 (8th Cir. 2021) ("Substantial evidence is less than a preponderance, but enough that a reasonable mind might accept it as adequate to support a conclusion.") (Quoting *Phillips v. Astrue*, 671 F.3d 699, 702 (8th Cir. 2012)). Thus, a court cannot disturb an ALJ's decision unless it falls outside this available "zone of choice" within which the ALJ can decide the case. *Hacker v. Barnhart*, 459 F.3d 934, 936 (8th Cir. 2006) (citation omitted). "An ALJ's decision is 'not outside the zone of choice' simply because [the c]ourt 'might have reached a different conclusion had [it] been the initial finder of fact.'" *Kraus*, 988 F.3d at 1024 (quoting *Bradley v. Astrue*, 528 F.3d 1113, 1115 (8th Cir. 2008)).

6

In determining whether the Commissioner's decision meets this standard, the court considers all the evidence in the record, but does not reweigh the evidence. *Vester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005). A court considers "both evidence that detracts from the Commissioner's decision, as well as evidence that supports it." *Fentress v. Berryhill*, 854 F.3d 1016, 1020 (8th Cir. 2017). The court must "search the record for evidence contradicting the [ALJ's] decision and give that evidence appropriate weight when determining whether the overall evidence in support is substantial." *Baldwin v. Barnhart*, 349 F.3d 549, 555 (8th Cir. 2003) (citing *Cline v. Sullivan*, 939 F.2d 560, 564 (8th Cir. 1991)). However, "even if inconsistent conclusions may be drawn from the evidence, the [Commissioner's] decision will be upheld if it is supported by substantial evidence on the record as a whole." *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005); *see also Igo v. Colvin*, 839 F.3d 724, 728 (8th Cir. 2016) (providing that a court "may not reverse simply because [it] would have reached a different conclusion than the [Commissioner] or because substantial evidence supports a contrary conclusion").

### III. DISCUSSION

Claimant alleges that the ALJ committed reversible error by (A) failing to provide good reasons for finding Claimant had no standing or walking limitations; and (B) by failing to properly evaluate the medical opinions of treating cardiologist, Dr. Fahed Al Darazi, M.D. (Doc. 8.)

#### A. Standing and Walking Limitations

##### 1. Parties' Arguments

Claimant argues that "the ALJ did not provide good reasons for finding [Claimant] had no standing or walking limitations." (Doc. 8 at 17.) Specifically, Claimant argues that the ALJ did not properly consider his credibility under *Polaski v. Heckler*, 739 F.2d 1320 (8th Cir. 1984). (*Id.*) Claimant also argues that the ALJ erred by failing to take

7

his obesity into consideration when dismissing his claims of standing and walking limitations. (*Id.*) Claimant asserts that "with surgical risks and three significant co-morbidities which [Claimant] was trying to reduce prior to the needed surgery, the ALJ's dismissing of [Claimant's] standing and walking limitations relation to his lumbar spine impairment combined with his other impairments, was an erroneous inference. (*Id.* at 20) (citing *Ford v. Astrue*, 518 F.3d 979 (8th Cir. 2008)). Finally, Claimant points out that he had a strong work record from 2000 through 2012 and from 2014 through 2018. (*Id.* at 22.) Claimant maintains that "[t]his strong record of substantial gainful activity prior to his application supported the credibility of [Claimant's] claims of an inability to work after his onset date." (*Id.* at 23) (citing *Hutsell v. Massanari*, 259 F.3d 707 (8th Cir. 2001)).

The Commissioner argues that "the ALJ reviewed the record; took [Claimant's] testimony; properly considered the severity of [Claimant's] alleged impairments; supported the RFC finding with substantial evidence; and sufficiently articulated the bases of her analysis in a detailed written decision." (Doc. 15 at 12-13.)

### 2. *Relevant Law*

When assessing a claimant's credibility, "the ALJ must consider all of the evidence, including objective medical evidence, the claimant's work history, and evidence relating to the factors set forth in *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984)." *Vance v. Berryhill*, 860 F.3d 1114, 1120 (8th Cir. 2017). In *Polaski*, the Eighth Circuit stated that:

> The [ALJ] must give full consideration to all the evidence presented relating to subjective complaints, including the claimant's prior work record, and observations by third parties and treating and examining physicians relating to such matters as: (1) the claimant's daily activities; (2) the duration, frequency, and intensity of pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness, and side effects of medication; [and] (5) functional restrictions.

8

739 F.2d at 1322. An ALJ is not required to methodically discuss each *Polaski* factor as long as the ALJ "acknowledge[es] and examin[es] those considerations before discounting [a claimant's] subjective complaints." *Lowe v. Apfel*, 226 F.3d 969, 972 (8th Cir. 2000) (citing *Brown v. Chater*, 87 F.3d 963, 966 (8th Cir. 1996)). The ALJ, however, may not disregard "a claimant's subjective complaints solely because the objective medical evidence does not fully support them." *Renstrom v. Astrue*, 680 F.3d 1057, 1066 (8th Cir. 2012) (quoting *Wiese v. Astrue*, 552 F.3d 728, 733 (8th Cir. 2009)).

Instead, an ALJ may discount a claimant's subjective complaints "if there are inconsistencies in the record as a whole." *Wildman v. Astrue*, 596 F.3d 959, 968 (8th Cir. 2010). Where an ALJ seriously considers, but for good reason explicitly discredits a claimant's subjective complaints, the court will not disturb the ALJ's credibility determination. *Johnson v. Apfel*, 240 F.3d 1145, 1148 (8th Cir. 2001); *see also Schultz v. Astrue*, 479 F.3d 979, 983 (8th Cir. 2007) (providing that deference is given to an ALJ when the ALJ explicitly discredits a claimant's testimony and gives good reasons for doing so). "The credibility of a claimant's subjective testimony is primarily for the ALJ to decide, not the courts." *Igo*, 839 F.3d at 731 (quoting *Pearsall v. Massanari*, 274 F.3d 1211, 1218 (8th Cir. 2001)).

### *3. Analysis*

In assessing Claimant's RFC and credibility, the ALJ determined that:

After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.

The undersigned finds that the evidence contained in the record fails to support allegations of a debilitating and work precluding impairment or

9

> combination of impairments. The treatment notes indicate at best, ailments that appear troublesome, but do not impose limitations of such significance as to preclude sustained competitive employment.
>
> The claimant does not have the signs typically associated with chronic, severe musculoskeletal pain such as muscle atrophy, persistent or frequently recurring muscle spasms, obvious or consistently reproducible neurological deficits (motor, sensory, or reflex loss) or other signs of nerve root impingement, significantly abnormal x-rays or other diagnostic tests, positive straight leg raising, persistent inflammatory signs (heat, redness, swelling, etc.), or bowel or bladder dysfunction. The medical evidence establishes no inability to ambulate effectively or to perform fine and gross movements effectively on a sustained basis due to any underlying musculoskeletal impairment. The claimant requires no cane, crutches, or other assistive device to stand or walk.

(AR at 23.) As Claimant correctly points out, the ALJ's assertion that Claimant had no "significantly abnormal x-rays or other diagnostic tests" is not entirely correct. On June 12, 2020, Claimant met with Dr. Hiroto Kawasaki complaining of back pain with associated radiation into the right thigh and knee. (*Id.* at 442.) An MRI showed multilevel degenerative disc disease of the lumbar spine and bilateral neuroforaminal stenosis at multiple levels. (*Id.* at 445.) Claimant was diagnosed with lumbar disc herniation at right L5/S1. (*Id.*) Dr. Kawasaki noted "very severe right L5-S1 neuroforaminal stenosis." (*Id.*) Dr. Kawasaki opined that Claimant was a "candidate for right sided hemilaminotomy at L5-S1 with discectomy," however, "[d]ue to co-morbidities (morbid obesity, cigarette smoking, diabetes mellitus) that he carries, he is at elevated risks of developing surgical complications such as recurrent of disc herniation, infection, DVT, PE, wound dehiscence etc." (*Id.*) Claimant declined surgery, preferring to "defer surgery at this point and lose some weight and do physical therapy." (*Id.*) Dr. Kawaski agreed with Claimant's plan to work on weight loss. (*Id.*)

The ALJ addressed the foregoing as follows:

> On June 12, 2020, an examining doctor noted an MRI of the lumbar spine showed multilevel degenerative disease with stenosis at several levels. On examination sensation was intact to light touch except over the right S1 distribution which was 30% of normal. Muscle strength was 5/5, or normal. Deep tendon reflexes were 2+ in his lower extremities. The claimant was observed to be in no acute distress. Judgment and insight were intact, speech was logical, mood and affect were normal. Diagnoses included spondylosis with radiculopathy and disc herniation on the right at L5-S1; morbid obesity with BMI 47.64; diabetes and cigarette smoking disease. The claimant was offered back surgery at L5-S1 but he declined (Exhibit B5F/8). The claimant's deferring surgery is not entirely consistent with the degree of limitations alleged. The undersigned has accounted for the objective findings in the residual functional capacity established for the claimant.

(Id. at 24.) The ALJ's discussion of Dr. Kawasaki's MRI findings is mostly accurate except that the ALJ questions Claimant's credibility because he deferred surgery but does not acknowledge that Claimant's obesity, among other things, created elevated risks of surgical complications. The ALJ also does not discuss Dr. Kawasaki's agreement with Claimant's desire to lose weight before undergoing surgery.

The ALJ also thoroughly addresses a variety of medical evidence where Claimant's symptoms appear minor or are improved or treated with medication. (*Id.* at 24-26.) Specifically, the ALJ states:

> Medications have been effective in reducing or controlling symptoms when used appropriately. There are no side effects of medications persuasively established which have lasted for a 12 month continuous period despite attempts at adjustment or substitution, and which further reduce the functional capacity assigned to the claimant by the undersigned.

(*Id.* at 28.) The ALJ concluded:

> The claimant alleged at the hearing that he could stand less than 5 minutes and walk one half a block before he would have to sit down. He maintained while sitting he had to be braced up on the couch by pillows and would relax at an angle and then would need to continuously move and then have

> to stand up a little bit. The claimant maintained he could not bend because lots of times he would get stabbing pain and it would lock up when he tried to stand up. However, the record does not provide objective support for this degree of ongoing symptoms. Although the claimant alleged having sleep apnea, the medical record establishes that he has persistently been found alert and oriented. The claimant maintained he had used a cane but admitted it had not been prescribed. The medical record does not establish persistent reported or observed difficulties with balance or gait.
>
> Based on the above discussion and inconsistencies in the record as a whole, the claimant's allegations concerning the existence, persistence and intensity of symptoms and functional limitations are not given full persuasiveness, but only such as reflected in the residual functional capacity assigned by the undersigned. The inconsistencies establish it is unlikely that the claimant's alleged symptoms reduce the claimant's capacity to perform work related activities to the degree claimed.
>
> In conclusion, the record considered as a whole supports some limitations in the claimant's ability to perform work-related activities. However, those limitations are adequately accommodated by the residual functional capacity (RFC) outlined above, which is consistent with objective medical findings and opinion evidence of record, as well as the documented activities. The record does not support greater limitations.

(*Id.* at 28-29.)

While the ALJ barely mentions Claimant's activities of daily living and left out pertinent information with regard to Dr. Kawasaki's opinions and Claimant declining back surgery, overall, the ALJ's credibility findings appear sufficient, except for one significant omission, Claimant's obesity. At step two, the ALJ found Claimant's obesity to be a severe impairment. (*Id.* at 19.) The ALJ also noted that:

> The undersigned has given consideration to Social Security Ruling 19-2p which instructs adjudicators to consider the effects of obesity not only under the listings, but also when assessing a claim at other steps of the sequential evaluation process, including when assessing an individual's residual functional capacity. When obesity is identified as a medically determinable impairment, consideration will be given to any functional limitations

12

resulting from the obesity in the residual functional capacity assessment in addition to any limitations resulting from any other physical or mental impairments identified.

(*Id.* at 19-20.) Except for noting Claimant's high BMI in a couple instances when reviewing the medical evidence in record, the ALJ does not address Claimant's obesity in determining his RFC. From April 2020 through August 2023, Claimant's BMI ranged from 42.61 to 51.06 (Id. at 445, 474, 529, 535, 848, 852, 867, 873, 1621, 1626, 1637, 1681, 2004, 2066, 2125, 2186). The light work, which the ALJ determined Claimant can perform involves the ability to stand and/or walk a total of about six hours in a typical eight-hour workday. *See* SSR 83-10 (providing that "the full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday"). SSR 19-2p addresses consideration of obesity in assessing an individual's RFC as follows:

> We must consider the limiting effects of obesity when assessing a person's RFC. RFC is the most an adult can do despite his or her limitation(s). As with any other impairment, we will explain how we reached our conclusion on whether obesity causes any limitations.
>
> A person may have limitations in any of the exertional functions, which are sitting, standing, walking, lifting, carrying, pushing, and pulling. A person may have limitations in the nonexertional functions of climbing, balancing, stooping, kneeling, crouching, and crawling. Obesity increases stress on weight-bearing joints and may contribute to limitation of the range of motion of the skeletal spine and extremities. Obesity may also affect a person's ability to manipulate objects, if there is adipose (fatty) tissue in the hands and fingers, or the ability to tolerate extreme heat, humidity, or hazards.
>
> We assess the RFC to show the effect obesity has upon the person's ability to perform routine movement and necessary physical activity within the work environment. People with an MDI of obesity may have limitations in the ability to sustain a function over time. In cases involving obesity, fatigue may affect the person's physical and mental ability to sustain work

13

> activity. This may be particularly true in cases involving obesity and sleep apnea.
>
> The combined effects of obesity with another impairment(s) may be greater than the effects of each of the impairments considered separately. For example, someone who has obesity and arthritis affecting a weight-bearing joint may have more pain and functional limitations than the person would have due to the arthritis alone. We consider all work-related physical and mental limitations, whether due to a person's obesity, other impairment(s), or combination of impairments.

2019 WL 2374244 (May 20, 2019). Here, the ALJ's decision does not appear to adequately address how Claimant's obesity affected Claimant's exertional and/or non-exertional functions, in particular walking and standing. The ALJ also did not address the combined effects of Claimant's obesity with his other impairments. Accordingly, I recommend that the Court reverse and remand this matter so that the ALJ may properly consider Claimant's credibility and fully, fairly develop the record as it pertains to the effects of Claimant's obesity on the RFC assessment, and properly consider Claimant's obesity in accordance with SSR 19-2p. *See Cox v. Astrue*, 495 F.3d 614, 618 (8th Cir. 2007); *Johnson*, 240 F.3d at 1148.

### B. Dr. Al Darazi's Opinions

#### 1. Parties' Arguments

Claimant argues that the "ALJ erred by not providing sufficient reasons for finding Dr. Al Darazi's opinion not persuasive." (Doc. 8 at 23.) Dr. Al Darazi, Claimant's cardiologist, limited Claimant to walking one block without rest or severe pain due to back and hip pain. Claimant maintains that the ALJ "should not have jumped to the conclusion Dr. Al Darazi was just parroting [Claimant's] claimed back and hip limitations and instead reviewed Dr. Al Darazi's notes to see they did support such limitation." (*Id.* at 25-26.)

The Commissioner argues that the ALJ "properly found Dr. Al Darazi's medical opinion was not persuasive." (Doc. 15 at 13.) The Commissioner maintains that a "persuasiveness finding can be based on more than simply the supportability and consistency factors and should be affirmed if substantial evidence supports the overall finding of not persuasive." (*Id.* at 14.)

### 2. *Pertinent Medical Evidence*

On June 13, 2023, Dr. Al Darazi filled out a "Cardiac Medical Source Statement" for Claimant. (AR at 2249-52.) Dr. Al Darazi diagnosed Claimant with coronary artery disease with stent, normal stress test in 2023, sleep apnea, and obesity. (*Id.* at 2249.) Dr. Al Darazi identified Claimant's signs and symptoms as chest tightness and exertional dyspnea. (*Id.*) Specifically, Dr. Al Darazi noted that Claimant experiences dull, left-side chest pain with "severe exertion." (*Id.*) Dr. Al Darazi opined that after experiencing an episode of angina, Claimant must rest for five minutes. (*Id.*) Finally, Dr. Al Darazi opined that Claimant could walk one block without rest or severe pain. (Id. at 2250.) Dr. Al Darazi based this limitation on Claimant's back and hip pain. (*Id.*)

Additionally, in February 2023, Claimant had an appointment with Dr. Al Darazi concerning experiences of shortness of breath. Dr. Al Darazi noted that over the past month, Claimant had two episodes of shortness of breath from walking and cleaning an apartment. (*Id.* at 2065.) The shortness of breath episodes resolved after five minutes of rest. (*Id.*) Dr. Al Darazi also noted that "[n]one of this is happening with regular daily activities." (*Id.*) Dr. Al Darazi opined that Claimant was able to walk one block and climb 26 stairs. Dr. AL Darazi indicated that Claimant's main limitation was back and hip pain. (*Id.*) Dr. Al Darazi noted that Claimant "was having episodes of dull ache on the left side of the chest that happens with exertion such as walking commensurate with stable angina." (*Id.* at 2067.) Finally, Dr. Al Darazi noted that Claimant could not

15

perform a treadmill test due to back and knee issues. (*Id.*) At the appointment, Claimant's BMI was 44.48. (*Id.* at 2066.)

### 3. *Relevant Law*

Claimant's claim was filed after March 27, 2017. Therefore, the rules articulated in 20 C.F.R. Section 404.1520c apply to analysis of this opinion. Under these rules, no medical opinion is automatically given controlling weight. 20 C.F.R. § 404.1520c(a). Opinions from medical sources are evaluated using the following factors: (1) supportability, (2) consistency, (3) provider's relationship with the claimant, (4) specialization, and (5) other factors. *Id.* § 404.1520c(c). Supportability and consistency are the most important factors when determining "how persuasive the ALJ find[s] a medical source's medical opinions . . . to be." Id. § 404.1520c(b)(2). The ALJ "may, but [is] not required to, explain how [he or she] considered the factors in paragraphs (c)(3) through (c)(5). . . ." *Id*.

Supportability concerns the internal consistency that a source's opinion has with the source's own findings and notes. "The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . ., the more persuasive the medical opinions . . . will be." 20 C.F.R. § 404.1520c(c)(1). Consistency concerns the external consistency that the source's opinion has with the findings and opinions of other sources. "The more consistent a medical opinion[] . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion[] . . . will be." 20 C.F.R. § 404.1520c(c)(2).

### 4. *Analysis*

In considering Dr. Al Darazi's opinions, the ALJ determined that:

> The claimant's treating cardiac specialist completed a medical source statement June 13, 2023. The claimant alleged having dull, left-sided chest pain with severe exertion. The claimant's alleged level of activity was

16

consistent with New York Heart Association class II according to the treating source (Exhibits B-30F, B-31F) (which is a slight limitation of physical activity). The doctor indicated the claimant could walk one city block, but the limitations were from back and hip pain. The doctor did not otherwise provide opinions on the claimant's work-related abilities.

The undersigned finds the opinion of ability to walk one block unpersuasive. The doctor's opinion is not supported by signs and findings consistent with the degree of limitation indicated. The opinion relies on subjective allegations while the record, as discussed above, does not fully support such degree of limitations. Further, this opinion relies on conditions outside of the provider's area of expertise, which further limits the support for such limitations. The opinion is inconsistent with other evidence and inconsistencies in the record as a whole which the doctor did not have available as indicated throughout this decision. As for the NYHA classification, the undersigned finds this largely persuasive as consistent with objective cardiac testing, examinations, and functioning in the record.

(AR at 27.)

Here, Dr. Al Darazi's opinion is of limited value. Dr. Al Darazi appears to have found that Claimant is limited to walking one block based on back and hip pain and based on Claimant's history of minimal shortness of breath episodes which occurred after Claimant overexerted himself while walking and cleaning an apartment. While the ALJ's consideration of Dr. Al Darazi's opinion is generally acceptable, because I have recommended that this matter be reversed and remanded for further consideration and development of the record in accordance with SSR 19-2p, I recommend on remand that the ALJ consider whether Dr. Al Darazi's opinion has any bearing on the ALJ's overall consideration of Claimant's obesity as it pertains to Claimant's RFC assessment.

## IV. CONCLUSION

For the foregoing reasons, I respectfully recommend that the District Court **REVERSE and REMAND** the decision of the ALJ for further development of the record as discussed herein.

The parties must file objections to this Report and Recommendation within fourteen (14) days of the service of a copy of this Report and Recommendation, in accordance with 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b). Objections must specify the parts of the Report and Recommendation to which objections are made, as well as the parts of the record forming the basis for the objections. *See* Fed. R. Civ. P. 72. Failure to object to the Report and Recommendation waives the right to de novo review by the District Court of any portion of the Report and Recommendation as well as the right to appeal from the findings of fact contained therein. *United States v. Wise*, 588 F.3d 531, 537 n.5 (8th Cir. 2009).

**DONE AND ENTERED** this 10th day of March, 2026.

Mark A. Roberts, United States Magistrate Judge
Northern District of Iowa